**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stacey Leo, <br><br> Plaintiff, <br><br> -v- <br><br> Province Therapeutics, LLC, *et al.*, <br><br> Defendants. | 2:23-cv-5418 <br> (NJC) (JMW) |

## <u>MEMORANDUM AND ORDER</u>

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Stacey Leo ("Leo") initiated this action against Defendants Herve Province ("Province") and Province Therapeutics, LLC (the "Corporate Defendant") (collectively, "Defendants") on July 17, 2023, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); violations of the New York Labor Law, Art. 19 ("NYLL"); and fraudulent reporting under the federal tax code, 26 U.S.C. § 7434. (Compl., ECF No. 1.) Specifically, Leo alleges that Defendants violated: (1) the FLSA by failing to pay minimum wages, failing to pay prompt wages, and failing to keep accurate records; (2) the NYLL by failing to pay wages, failing to pay minimum wages, failing to pay regular wages, failing to provide wage notice, and failing to keep accurate records; and (3) the federal tax code, 26 U.S.C. § 7434 ("Section 7434"), by fraudulently reporting Leo's 2021 W2. (Compl. ¶¶ 24–49.) After Defendants failed to appear, the Clerk of Court entered a certificate of default against them at Leo's request on September 11, 2023. (ECF Nos. 11–14.)

Before the Court are Leo's unopposed Motion for Default Judgment (ECF No. 18) and unopposed Motion for Disbursement of Funds (ECF No. 17.) The Motion for Default Judgment seeks a total of $63,802 in damages as well as post-judgment interest and reasonable attorney fees. (Mot. at 1–2.)

For the reasons that follow, the Court grants in part and denies in part the Motion for Default Judgment, and denies the Motion for Disbursement of Funds. The Court respectfully refers the determination of damages to Magistrate Judge Wicks. The entry of default judgment will occur after the damages determination.

## JURISDICTION

The Court has federal question jurisdiction over Leo's FLSA and Section 7434 claims pursuant to 18 U.S.C. § 1331. Because the remaining NYLL claims are part of the same case or controversy and arise out of the same common nucleus of operative facts, the Court has supplemental jurisdiction over these claims pursuant to 18 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because a substantial part of the events or omissions giving rise to this action occurred in this judicial district, where Leo worked for the Corporate Defendant. (*See* Compl. ¶ 6.)

When considering a motion for default judgment, a court "may first assure itself that it has personal jurisdiction over the defendant." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011). Since a judgment rendered against a defendant over whom the court lacks personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Zinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI)

(SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017) (quotation marks omitted). Here, the Defendants failed to appear in this action so "a *sua sponte* assessment of personal jurisdiction is appropriate." *Id*. (conducting a *sua sponte* personal jurisdiction analysis on a default judgment motion).

The Court has personal jurisdiction over Defendants because they are New York residents. Leo's Complaint alleges that the Corporate Defendant is a New York company and that Province is a New York resident. (*See* Compl. ¶¶ 6, 10.) This Court has personal jurisdiction over residents of the state of New York. *See* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1064 (4th Ed. 2020) (describing the defendant's residence in the forum state as one of the oldest bases of personal jurisdiction); *cf. Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (a court may assert personal jurisdiction over foreign defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (quotation marks omitted). Additionally, Defendants were both properly served, Province by personal service at his New York home and the Corporate Defendant by service on the New York Secretary of State. (ECF Nos. 9, 10.) Therefore, this Court has personal jurisdiction over both Defendants.

## BACKGROUND

The following facts are taken from Leo's Complaint. Leo worked for the Corporate Defendant from 2017 to 2022 as a Board-Certified Behavior Analyst working one-on-one with qualified children. (Compl. ¶ 1, 18.) The Corporate Defendant contracts with the NYC Department of Education to provide services. (*Id*. ¶ 7.) From 2017 to 2022, around ten people worked for the Corporate Defendant. (*Id*. ¶ 7, 18.) If these individuals worked for 45 weeks per

year and 30 hours per week at $90 per hour—Leo's rate of pay—Province would have had to bring in more than $1.2 million per year in order to pay employee wages. (*See id.*) Consequently, the Corporate Defendant had annual gross revenues of more than $500,000 from 2017 to 2022. (*Id.*)

Defendant Province had an ownership interest in and/or is a shareholder of the Corporate Defendant. (*Id.* ¶ 14.) Defendant Province was one of the ten largest shareholders/owners of the Corporate Defendant. (*Id.* ¶ 15.) At all relevant times, Defendant Province actively participated in the business of the Corporate Defendant and exercised substantial control over the functions of the Corporate Defendant's employees, including Leo. (*Id.* ¶¶ 11–12.)

While she was working for the Corporate Defendant, Leo's rate of pay was $90 per hour for the time she actively provided client services. (*See id.* ¶ 20.) Leo's "primary supervisor" was Province, who hired and paid her. (*Id.* ¶¶ 19, 12–13.) During calendar year 2022, Defendants did not pay Leo at all for a number of weeks. (*Id.* ¶ 22.) On at least some occasions, Leo did not receive her paychecks on the prescribed payday. (*Id.* ¶ 26.) During 2022, Defendants failed to pay Leo $34,182. (*Id.* ¶ 22.) Defendants later paid Leo $11,952, but still owed her $22,230. (*Id.*) Defendants later issued to Leo a W2 for 2021 that did not accurately reflect the amount Defendants paid her. (*Id.* ¶ 48.)

## PROCEDURAL HISTORY

Leo filed the Complaint on July 17, 2023. (Compl.) A summons was issued on July 20, 2023, as to the Corporate Defendant, and on July 21, 2023, as to Province. (ECF Nos. 6, 8.) Both summonses were returned executed on August 21, 2023. (ECF Nos. 9, 10.) On September 11, 2023, Leo requested a certificate of default, which the Clerk of Court entered later that day as to

both Defendants. (ECF Nos. 11–14.) That same day, Leo filed a letter regarding an anticipated motion for disbursement of funds indicating that any funds disbursed by the Court would offset any judgment resulting from Leo's concurrently filed motion for default judgment. (ECF No. 15.) On September 26, 2023, the Court ordered Leo to file the Motion for Disbursement of Funds and the Motion for Default Judgment by October 26, 2023. (Elec. Order, Sept. 26, 2023.)

On October 25, 2023, Leo filed a letter motion requesting permission to file the Motion for Disbursement of Funds under seal because the Motion contained documents involved in confidential settlement negotiations. (ECF No. 16.) On October 26, 2023, the Court granted Leo's motion to file under seal, and Leo filed both the Motion for Disbursement of Funds and the Motion for Default Judgment later that day. (ECF Nos. 17, 18.)

On November 21, 2023, in accordance with this Court's November 17, 2023 Electronic Order, Leo filed proof of service of its Motion for Default Judgment and supporting papers on Defendants. (ECF No. 19.) On November 30, 2023, this Court denied the Motion for Default Judgment with leave to renew pursuant to Leo's compliance with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931(b)(1)(A) ("SCRA"). (Elec. Order, Nov. 30, 2023.) On December 7, 2023, Leo filed an additional affidavit regarding Defendant Province's military status in compliance with the SCRA. (ECF No. 20.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55, default judgments are governed by a two-step process. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* Local Civil Rule 55.2. After the Clerk issues a certificate of default, a party may apply for entry of a default judgment against the

defaulting party. Fed. R. Civ. P. 55(b); *see also* Local Civil Rule 55.2(b). The decision to grant a motion for default judgment is left to the sound discretion of the district court. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (reviewing district court's decision entering a default judgment for abuse of discretion.); *see also No Limit Auto Enters., Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp*., No. 122CV5053FBPK, 2023 WL 6318618, at *4 (E.D.N.Y. Sept. 12, 2023) (same), *report and recommendation adopted*, No. 122CV5053FBPK, 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023). A plaintiff must still demonstrate, however, that the factual allegations set forth in the complaint, accepted as true, state valid claims. *See Bricklayers*, 779 F.3d at 187 (following entry of "default against defendants[,]" a court "may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."); *Mickalis Pawn Shop*, 645 F.3d at 137 ("[A] court is required to accept all of the . . . factual allegations [of the party moving for default judgment] as true and draw all reasonable inferences in its favor . . . but it is also required to determine whether [those] allegations establish [the defaulting party's] liability as a matter of law." (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). To determine liability, courts may consider "uncontroverted documentary evidence" submitted with the motion

for default judgment as well as the factual allegations in the complaint. *See Bricklayers*, 779 F.3d at 189 (per curiam).[1]

The Court must therefore ensure that Leo satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2, and that the allegations in Leo's Complaint, when accepted as true, along with any uncontroverted documentary evidence establish liability as a matter of law, *see Bricklayers*, 779 F.3d at 187.

## DISCUSSION

### I.    Procedural Compliance

Under the Local Civil Rules, a motion must include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. Local Civil Rule 7.1(a)(1)–(3). Local Civil Rule 55 also requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a

---

[1] The Second Circuit has relied on "uncontroverted documentary evidence" in affirming the district court's decision to enter a default judgment against an individual defendant in an ERISA action. *See Bricklayers*, 779 F.3d at 189. Following that decision, judges of this Court have considered uncontroverted documentary evidence when assessing a defaulting party's liability on a default judgment motion. *See, e.g., Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841 (LDH), 2018 WL 4327923 (E.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp.*, No. 17CV3841LDHRLM, 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018) (considering the complaint and additional declarations); *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. CV 14-1695 ARR MDG, 2015 WL 1529653 (E.D.N.Y. Mar. 31, 2015) (same). Other judges of this Court, however, have declined to consider documentary evidence submitted by the party moving for a default judgment when assessing the defaulting party's liability, even after the Second Circuit's decision in *Bricklayers. See, e.g., Ferrera v. Tire Shop Ctr.*, No. 14 CV 04657 FB LB, 2015 WL 3562624, at *4 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-CV-04657 FB LB, 2015 WL 3604078 (E.D.N.Y. June 5, 2015).

default is sought at the last known address of such party with proof of mailing filed with the

Court. Local Civil Rule 55.2(b)–(c). Finally, a motion for default judgment against an individual

must include "an affidavit . . . stating whether or not the defendant is in military service and

showing necessary facts to support the affidavit." Servicemembers Civil Relief Act ("SCRA"),

50 U.S.C. § 3931; *see Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18- CIV-5624 (ARR)

(VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation

adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (applying SCRA to the individual

defendants on motion for default judgment).

Leo's Motion for Default Judgment is procedurally proper. The Motion complies with the

Local Civil Rules because it is accompanied by: a memorandum of law (ECF No. 18-1); a

declaration in support (ECF No. 18-2); a statement of damages (ECF No. 18-3); a proposed

judgment (ECF No. 18-4); a copy of the complaint and exhibits (ECF Nos. 18-6–18-9); a copy of

the certificate of default (ECF Nos. 18-12, 18-13); and the affidavit of service of the motion for

default judgment on all defendants (ECF Nos. 18-10, 18-11, 19). The Motion also complies with

the SCRA because it includes a supporting affidavit from Plaintiff's counsel indicating that

Defendant Province is not in the military on active duty. Dodson Decl., ECF No. 20.

Additionally, service was proper as to both Defendants. Defendant Province was served

on August 9, 2023 via personal service. (ECF No. 9.) The Corporate Defendant was served on

August 17, 2023 via the New York Secretary of State, which is proper service. ECF No. 10; *see*

Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1) (a corporation may be served in accordance with the law of

the state where the federal district court sits or where service is effectuated); N.Y. Bus. Corp.

Law § 306(b)(1) (designating the Secretary of State as the agent for service for corporations); *see

also Baker v. Latham*, 72 F.3d 246, 255–56 (2d Cir. 1995).

8

Accordingly, the Court finds that Leo's Motion for Default Judgment is procedurally proper and now turns to the merits of the Motion.

## II.    Default Factors

In determining whether to enter a default judgment, this Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd*., 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are: (1) "the willfulness of default," (2) "the existence of a meritorious defense," and (3) "the possibility of prejudice to plaintiffs should the default judgment be vacated." *Pecarsky*, 249 F.3d at 171; s*ee also ADI Glob. Distribution v. Green*, No. 20CV03869AMDJMW, 2023 WL 3355049 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, No. 20CV3869AMDJMW, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).

Consideration of these factors weighs heavily toward the entry of a default judgment here, where both Defendants have failed to appear. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4. As to the first factor, Defendants' failure to respond to the Complaint demonstrates that the default was willful. *See Flooring Experts, Inc.*, 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive, the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). As to the second factor, the Court cannot conclude there is any meritorious defense to Leo's allegations because Defendants did not appear and no defense of any kind has been presented to the Court. *See Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3–4 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such

defense has been presented to the Court."), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012). As to the third factor, the non-defaulting party—Leo—would be prejudiced if the motion for default were denied in this case, "as there are no additional steps available to secure relief in this Court." *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018).

As a result, all three factors permit entry of a default judgment against the Corporate Defendant and Province. The Court now determines the liability imposed in such a judgment.

## III.   Liability

Leo's Complaint alleges violations of the FLSA, the NYLL, and Section 7434 of the federal tax code. As discussed above, "[w]ell-pleaded allegations in a complaint are presumed true when a defendant fails to present a defense to the court." *ADI Glob. Distribution*, 2023 WL 3355049 at *5; *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th Ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."). *See also J & J Sports Prods., Inc. v. Daley*, No. 06-CV-0238, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007) ("conclusory allegations based on information and belief" are insufficient to support a finding of default-based liability). In addition to the factual allegations of the complaint, a court may consider "uncontroverted documentary evidence" submitted with the motion for default judgment. *See Bricklayers*, 779 F.3d at 189; *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841 (LDH), 2018 WL 4327923 (E.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp.*, No. 17CV3841LDHRLM, 2018

WL 4326925 (E.D.N.Y. Sept. 10, 2018) (considering the complaint and additional declarations); *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. CV 14-1695 ARR MDG, 2015 WL 1529653 (E.D.N.Y. Mar. 31, 2015) (same); *Cabrera v. 1560 Chirp Corp.*, No. 15-cv-8194, 2017 WL 1289349, at *11 (S.D.N.Y. March 6, 2017) (same).

    A.  <u>Statute of Limitations</u>

    Leo's claims fall within the statute of limitations for both the FLSA and the NYLL.

    The statute of limitations for claims for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under FLSA is two years, and three years where the violation is willful. 29 U.S.C. § 255(a). Leo alleges that Defendants' FLSA violations are willful (Compl. ¶ 30), so the three-year limitation applies. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) ("[A]s [the p]laintiff alleges that [the defendant in default] committed FLSA violations willfully, . . . the three-year federal period applies.") (collecting cases) (citations omitted).

    The statute of limitations under the NYLL is six years. N.Y. Lab Law §§ 198(3), 663(3); *Man Wei Shiu v. New Peking Taste Inc.,* No. 11 Civ. 1175(NGG)(RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014). Therefore, plaintiffs may recover under the NYLL for claims arising outside of the FLSA's three-year limitations period. *See Pinzon v. Paul Lent Mech. Sys. Inc.,* No. 11 Civ. 3384(DRH)(WDW), 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), *report & recommendation adopted,* No. 11 Civ. 3384(DRH)(WDW), 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

    Here, Leo filed the Complaint on July 17, 2023, alleging violations beginning in 2022. (*See generally* Compl.) This is inside both the six-year NYLL and three-year FLSA limitations periods.

B.  FLSA Coverage

To establish a FLSA claim, Leo must prove: (1) that the Corporate Defendant and Province are employers subject to FLSA; and (2) that Leo is "an employee within the meaning of FLSA [whose] . . . employment relationship is not exempted from FLSA." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474-EK-SJB, 2022 WL 940504 (E.D.N.Y. Jan. 25, 2022) (brackets omitted), *report and recommendation adopted*, No. 20-CV-3474(EK)(SJB), 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing *Tony & Susan Alamo Found. v. Sec'y of Lab*, 471 U.S. 290, 295 (1985)).

a.  Enterprise Coverage

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. §§ 206(a), 207(a)(1); *Reyes*, 2022 WL 940504 at *3. "To properly allege individual or enterprise coverage, plaintiff need not do much. Aside from stating the nature of his work and the nature of his employer's business he must provide only straightforward allegation connecting that work to interstate commerce." *Reyes*, 2022 WL 940504 at *3 (brackets omitted).

Leo has shown that Defendants are engaged in interstate commerce and subject to FLSA. Leo alleges that she was employed by the Corporate Defendant, which is an "enterprise engaged in commerce," with annual gross revenues in excess of $500,000." (Compl. ¶ 7.) Leo backs up that assertion by supplying rough calculations that the Corporate Defendant likely brought in around $1,200,000 each year in order to pay its approximately ten staff members. *See id.*; *see also Fermin*, 93 F. Supp. 3d at 33 (finding plaintiff alleged enterprise where complaint recited statutory definition without providing additional factual support).

b.  Employment Relationship

Leo has also shown that she is an employee covered by FLSA. To determine whether an individual is "employed," "the ultimate question is whether the putative employee is economically dependent on the putative employer." *Reyes*, 2022 WL 940504, at *6 (quotation marks omitted). "In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotation marks omitted). An individual defendant is an employer based on whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Lopez v. Puri*, No. 20CV3450AMDMMH, 2022 WL 20527200, at *4 (E.D.N.Y. Sept. 19, 2022) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013)). Where a corporate and individual defendant are both employers under the FLSA, they are jointly and severally liable under the statute. *See Fermin*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

Leo alleges that she was employed by Defendants "and there is no basis from the Complaint to infer anything other than that [Leo] was working for a business owned and operated by someone else." *Reyes*, 2022 WL 940504, at *6. Leo alleges that Province was one of the ten largest shareholders/owners of the Corporate Defendant, her boss, and that he hired her, paid her, and was in charge of the company's finances. *See* Compl. ¶¶ 13, 15; *Pineda v. Masonry Const., Inc.*, 831 F.Supp.2d 666, 685 (S.D.N.Y. 2011) (allegations that an individual defendant "'was an owner, partner, or manager[,]'" coupled with his default, were sufficient to qualify him as an FLSA and a NYLL employer, and to impose joint and several liability with corporate defendants for wage law violations). As a result, Leo has shown that both Province and the

13

Corporate Defendant are employers under the FLSA and, as such, are jointly and severally liable for any damages to Leo under the statute.

C. <u>FLSA Claims</u>

Leo alleges that Defendants violated the FLSA by failing to pay Leo minimum wage, failing to pay prompt wages, failing to keep accurate records, and failing to provide a wage notice. (Compl. ¶¶ 24–45.) The Court considers each of these claims.

First, under the FLSA, Defendants were required to pay Leo a minimum wage during the times she worked for them. 29 U.S.C. § 206. "To establish liability on a claim for underpayment of wages, 'a plaintiff must prove that [they] performed work for which [they were] not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 253 (S.D.N.Y. 2021) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011)).

Here, taking the allegations of the Complaint as true, as this Court must do on a default judgment motion, Leo establishes that Defendants violated the minimum wage provisions of the FLSA. Leo alleges that Defendants failed to pay her "at all for a number of workweeks, not even the minimum wage." (Compl. ¶ 21; *see also* ¶¶ 25, 34–35.) In support of the Motion, Leo attaches a Declaration in which she attests that Defendants failed to pay her any wages for work she performed from November 2021 through March 2022, and that her total unpaid wages for that period was $34,182 as evidenced by the timesheets she filled out for the Corporate Defendant. ECF No. 18-5 ¶¶ 14–15 ("Leo Decl."); *see Herrera*, 2015 WL 1529653, at *5 (considering allegations in the complaint and plaintiff's declaration to determine defendant's liability under FLSA on a motion for default judgment). Leo adds that she received a payment of $11,952 from Defendants, leaving a remaining balance of $22,230 in unpaid wages. (Leo Decl.

14

¶ 16.) Accepting these allegations as true, the Court finds that Defendants are liable for failure to pay Leo minimum wages under Section 206 of the FLSA.

Second, the FLSA requires "'wages to be paid in a timely fashion.'" *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 147–48 (E.D.N.Y. 2023) (citing *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998)). Courts find no violation of the FLSA's prompt payment requirement where the "employer changes the pay schedule, provided that the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect of evading the FLSA's substantive minimum wage or overtime requirements." *Rogers,* 148 F.3d at 58. Employers who violate the FLSA's prompt payment requirement "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(a).

Here, Leo has shown that Defendants violated the prompt payment requirement of the FLSA. The Complaint alleges that Defendants "at some point tendered $11,952" in late payment for her unpaid wages and that "Defendants paid Plaintiff late when they did pay her during the course of her employment." (Compl. ¶ 23; *see also* ¶ 26 ("On at least some occasions, Plaintiff did not receive her paychecks on the prescribed paydays."); ¶ 39 ("Plaintiff was not consistently paid on regular paydays designated in advance by the employer").) Leo attests that she did not understand the late payment schedule to be permanent, stating that Defendants said it "was just a timing issue and that [Plaintiff] would be paid once the money came through." (Leo Decl. ¶ 11.) Moreover, the change has resulted in an unreasonable delay in payment that has had the effect of evading the FLSA's substantive minimum wage requirement because even after Defendants paid Plaintiff $11,952, they still owed her $22,230, which is more than half of what they failed to pay

her for work performed during 2022. (*See* Compl. ¶ 22.) Therefore, the Court finds that Defendants are liable for failure to pay Leo's prompt wages under the FLSA.

Third, the FLSA requires covered employers keep records regarding their employees "'wages, hours, and other conditions and practices of employment' for a certain period of time." *Gomez*, 2014 WL 1310296, at *2. The FLSA requires employers to "maintain and preserve payroll or other records" containing information on each employee's name, address, date of birth, sex, occupation, work week, regular hourly rate of pay, hours worked each day per workweek, straight-time earnings, premium pay for overtime, additions or deductions from wages, total wages paid each pay period, date of payment and pay period covered. 29 C.F.R. § 516.2(a)(1)–(12). It is unlawful under the FLSA for any employer covered under the statute to violate any of these record-keeping provisions. *See* 29 U.S.C. § 215(a)(5). It is well established, however, that "there is no private right of action for recordkeeping claims under the FLSA." *Hernandez v. Staten Island Univ. Hosp./Northwell Health*, No. 22-CV-3572-RPK-JRC, 2023 WL 7000876, at *4 (E.D.N.Y. Aug. 18, 2023) (collecting cases). Accordingly, the Motion for Default Judgment is denied as to the FLSA recordkeeping claims.

### D.  NYLL Coverage

To recover under the NYLL, a plaintiff must show that they are an "employee" and that the defendant was an "employer" under the statute. *See Fermin*, 93 F. Supp. 3d at 34. New York courts interpret the definition of "employer" under the NYLL as coextensive with the definition under the FLSA. *See,* e.g*., Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F.Supp.2d 253, 308 n.21 (S.D.N.Y. 2011); *see Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010); *Jiao v. Shi Ya Chen,* No. 03 Civ. 165(DF), 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007). While "the New York Court of Appeals has not yet resolved whether the NYLL's standard for

16

employer status is coextensive with the FLSA's . . . there is no case law to the contrary." *Wang v. LW Rest., Inc.,* 81 F.Supp.3d 241, 258 (E.D.N.Y. Jan. 29, 2015) (quotation marks omitted).

Here, Leo has shown that she was an employee of Defendants for purposes of the NYLL. Leo alleges that "Defendant [sic]" issued her a W2, and that Province was her boss, hired her, paid her, and was in charge of the company's finances. (*See* Compl. ¶¶ 13, 15, 48.) Because Province is an employer under the FLSA, he is also an employer under the NYLL. *See Fermin*, at 37 ("As a result, in light of my finding that the Individual Defendants were Plaintiffs' employers for the purposes of FLSA liability, I find that the Individual Defendants were Plaintiffs' employers for the purposes of NYLL liability as well."). Therefore, the Corporate Defendant and Province are jointly and severally liable for any damages to Leo under the NYLL.

E.   NYLL Claims

Leo alleges that Defendants violated the NYLL by failing to pay Leo minimum wage, failing to pay prompt wages, failing to keep accurate records, and failing to provide a wage notice. (Compl. ¶¶ 24–45.) The Court considers each of these claims.

First, under the NYLL, Defendants were required to pay Leo a minimum wage during the times she worked for them. N.Y. Lab. Law § 652; *Gomez*, 2014 WL 1310296, at *5 (noting that the NYLL generally "mirrors the FLSA in compensation provisions regarding minimum hourly wages."). "To establish liability on a claim for underpayment of wages, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Chichinadze*, 517 F. Supp. 3d at 253 (quoting *Kuebel*, 643 F.3d at 361. Here, Leo has established that Defendants violated the minimum wage provisions of the NYLL for the same reasons that Leo has shown that Defendants violated the minimum wage provisions of the NYLL.

Second, the NYLL requires prompt payment of wages. *See Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12CV5565PKCRER, 2016 WL 7217641, at *12 (E.D.N.Y. Dec. 13, 2016) (citing N.Y. Lab. Law § 191). The statute requires employers to "make payments of wages timely" and requires that clerical and other workers must be paid "in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014); N.Y. Lab. Law § 191. Here, Leo has established that Defendants violated the prompt payment provisions of the NYLL for the same reasons that Leo has shown that Defendants violated the prompt payment requirement of the NYLL.

Third, the NYLL requires covered employers keep records regarding their employees' wages and hours for a certain period of time. *See* N.Y. Lab. Law § 195; *see also* N.Y. Lab. Law §§ 661, 161. "[T]here is no independent cause of action for violations of the New York Labor Law's recordkeeping provisions." *Hernandez*, 2023 WL 7000876, at *4. Accordingly, the Motion for Default Judgment is denied as to the NYLL recordkeeping claims.

Finally, Leo alleges that Defendants failed to provide her with a wage notice containing rate of pay and other information in violation of N.Y. Lab. L. § 195(1)(a) and § 198(1)(b). (Compl. ¶ 41.) "The New York Labor Law, as amended by the Wage Theft Prevention Act, 2010 N.Y. Laws ch. 564 § 3, requires an employer to 'furnish each employee with a statement with every payment of wages' listing information including 'the dates of work covered by that payment of wages' and the 'rate or rates of pay and basis thereof.'" *Hernandez*, 2023 WL 7000876, at *5 (brackets omitted). The Court notes that Leo's allegation does not specify which defendant she alleges violated the NYLL's wage notice requirement. Additionally, the allegation

18

is merely a conclusory, boilerplate allegation with no additional factual support. As a result, the Court finds that Leo's NYLL wage notice claim fails to state a claim to relief.

F.   Defendants' Liability for Fraudulently Reporting Leo's W2

Leo alleges a willful violation of 26 U.S.C. § 7434 when Defendants issued her a W2 that inaccurately recorded her wages for 2021. (Compl. ¶¶ 46–49.) Under that provision, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). "The private right of action created by [Section] 7343(a) applies only '[i]f any person willfully files a fraudulent information return.'" *Osuagwuv. Home Point Fin. Corp.*, No. 22-1403, 2023 WL 3335315, at *2 (2d Cir. May 10, 2023) (quoting *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011)); *see also Doherty v. Turner Broad. Sys., Inc.*, 72 F.4th 324, 329 (D.C. Cir. 2023) (holding that Section 7343 requires plaintiff to show that "(1) the defendant filed an information return on [their] behalf, (2) the return was false as to the amount paid, and (3) the defendant acted knowingly or recklessly.").

Here, Leo alleges that the violation was willful and that the W2 inaccurately stated the amount of money Defendants paid her. (Compl. ¶¶ 47–48.) The Court notes, however, that the Complaint fails to specify which defendant is alleged to have willfully violated 26 U.S.C. § 7434. (Compl. ¶¶ 47, 49 ("Defendant willfully filed a fraudulent information return . . . Defendant is liable to the Plaintiff…").) As a result, and accepting Leo's allegations as true, the allegations fail to state a claim for relief because they do not identify which defendant is alleged to have violated 26 U.S.C. § 7434.

### IV.    Disbursement of Funds

In conjunction with her Motion for Default Judgment, Leo filed a Motion for Disbursement of Funds, asking the Court to release funds from the trust account held by Plaintiff's counsel's law firm, which Defendant Province submitted during the extensive settlement negotiations that preceded the filing of this action. (*See* ECF No. 15; *see also* Mot. Disbursement of Funds, ECF No. 17-1.) The Motion proposes a distribution between Plaintiff's counsel and Leo and cites case law in support of the proposal. (*See* Mot. Disbursement of Funds at 1–2.) The Motion, however, does not provide any legal support for the proposition that the Court may disburse funds paid by a defaulting party into a law firm's trust account in the course of settlement negotiations that took place before the commencement of the action. In the absence of any legal authority supporting the Court's power to disburse such funds, the Court denies Leo's Motion for Disbursement of Funds.

### CONCLUSION

For the reasons set forth above, the Court grants Leo's Motion for Default Judgment (ECF No. 18) as to the minimum wage and prompt payment claims under the FLSA and NYLL and denies the Motion as to the recordkeeping claims under the FLSA and NYLL, the wage notice claim under the NYLL, and the fraudulent reporting claim under Section 7434. The Court refers to Magistrate Judge James Wicks the calculation of damages on the claims for which this Court has found the Defendants liable. The Court also denies in full the Motion for Disbursement of Funds (ECF No. 17-1).

Dated:  Central Islip, New York
February 6, 2024

                    _____/s Nusrat J. Choudhury_____
                            NUSRAT J. CHOUDHURY
                            United States District Judge